UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LEE F. ADAMS,**

        **Plaintiff,**

v.   Case No.  6:21-cv-140-CEM-DCI

**M. TODD, M. THOMPSON, and CENTURION OF FLORIDA,**

        **Defendants.**

                                    /

**ORDER**

THIS CAUSE is before the Court on a Motion to Dismiss ("Motion," Doc. 35) filed by Defendants M. Todd, R.N. ("Nurse Todd"), M. Thompson, L.P.N. ("Nurse Thompson"), and Centurion of Florida, LLC ("Centurion"), to which Plaintiff filed a Response. (Doc. 39). Also before the Court is Plaintiff's Motion to Hear and Rule (Doc. 43) in which Plaintiff asks the Court to rule on Defendant's Motion so that the case can proceed. As set forth below, the Motion will granted and the Motion to Hear and Rule is granted in part.

**I.   FACTUAL BACKGROUND**

Plaintiff is a convicted state prisoner who is currently imprisoned at the Florida Department of Corrections' Northwest Florida Reception Center in Chipley, Florida. He proceeds in this action *pro se*.

Plaintiff alleges that, on January 6, 2020, when he was imprisoned at Tomoka Correctional Institution ("Tomoka CI"), he suffered "rectal bleeding and severe pain." (Doc. 12 at 4, ¶ 1). He submitted a sick call request and was thereafter evaluated by Nurse Todd. (Doc. 12 at 4, ¶¶ 1–2). Upon examining Plaintiff, Nurse Todd "witness[ed] lumps as well as bleeding." (Doc. 12 at 4, ¶ 3). Although Plaintiff "requested to see the doctor because he was in excruciating pain," Nurse Todd refused to refer him to the doctor and refused to provide him with over-the-counter pain medication. (Doc. 12 a 4, ¶¶ 4–5). Plaintiff claims Nurse Todd was "a devout Christian" who "routinely den[ied] prisoners she believe[d] [to be] homosexual from getting proper medical treatment." (Doc. 12 at 4, ¶ 6).

Plaintiff contacted his cousin, who called the warden at Tomoka CI on February 3, 2020, and "lodged a formal complaint against . . . Nurse Todd for depriving Plaintiff of adequate medical treatment." (Doc. 12 at 4–5, ¶¶ 7–8). "The warden advised [Plaintiff's cousin] that her office would contact the medical department about the matter." (Doc. 12 at 5, ¶ 9).

On February 7, 2020, Plaintiff was called to the medical department regarding his condition, which he vaguely describes as "worsening." (Doc. 12 at 5, ¶ 10). This time, Plaintiff was examined by Nurse Thompson, who "noted a growth in Plaintiff's genital area." (Doc. 12 at 5, ¶¶ 11–12). Nurse Thompson "told Plaintiff that there

was absolutely nothing he[1] could do about the growth." (Doc. 12 at 5, ¶ 12). Nurse Thompson explained that the growth developed from sexual intercourse, that Plaintiff "probably obtained the disease" through sex with another male prisoner, and that "the chief medical officer would not spend any money on getting [Plaintiff] surgery." (Doc. 12 at 5, ¶¶ 13-15). Plaintiff then explained he had not had sex with another man. (Doc. 12 at 5, ¶ 16). Apparently believing Plaintiff was not being truthful, Nurse Thompson refused to refer Plaintiff to the doctor or to order lab work and refused to prescribe him over-the-counter medication for pain. (Doc. 12 at 5, ¶¶ 17–18).

On February 17, 2020, Plaintiff was transferred to a prison medical facility in Lake Butler, Florida, for an unrelated reason.[2] There, he sought medical attention for his condition, and the medical staff told Plaintiff that the nurses at Tomoka CI acted unethically and unprofessionally. (Doc. 12 at 5, ¶¶ 19–20). Plaintiff alleges that he "immediately began getting adequate treatment at Lake Butler." (Doc. 12 at 5, ¶ 21). Then, on April 13, 2020, Plaintiff had "surgery in a mobile surgery center to eliminate the growth." (Doc. 12 at 5, ¶ 21).

---

[1] It is unclear whether use of the word "he" refers to Plaintiff or to Nurse Thompson.

[2] Plaintiff refers to the facility as "Lake Butler Medical Center." (Doc. 12 at 5, ¶ 19). Defendants note that Plaintiff presumably meant "Reception and Medical Center, which is a [Florida Department of Corrections] correctional institution and hospital located in Lake Butler, Florida." (Doc. 35 at 3, n.1).

Plaintiff claims that Nurses Todd and Thompson were deliberately indifferent to his serious medical needs and that he suffered unnecessary pain and intentional emotional distress because of their negligence. (Doc. 12 at 6, ¶¶ 25–26). Plaintiff also claims that he suffered "a permanent injury in the rectum area," consisting of "scarring of rectal tissues a[nd] permanent disfigurement" because of their negligence. (Doc. 12 at 6, ¶ 27).

He further claims that Centurion "was deliberate[ly] indifferent to [his] serious medical needs by instructing its employees to ignore serious medical problem[s] by misdiagnosis and negligence." (Doc. 12 at 5, ¶ 22). Further, he alleges that "Centurion created a custom and policy of allowing Doctors and nurses to deprive prisoners [of] adequate medical attention[] when the procedure would c[ost] the company money." (Doc. 12 at 5, ¶ 23). Plaintiff claims that Centurion's custom and policy directly caused his injuries. (Doc. 12 at 6, ¶ 24).

Plaintiff seeks 1.3 million dollars in compensatory damages, 2.3 million dollars in punitive damages, and court costs.

## II.   ANALYSIS

Defendants argue that the Amended Complaint should be dismissed because Plaintiff has misrepresented his history of federal litigation to this Court. (Doc. 35 at 5–7). Defendants also argue that the Amended Complaint should be dismissed because Plaintiff fails to state a claim upon which relief may be granted.

### A. Failure to Disclose Prior Litigation

Local Rule 6.04(a)(3), M.D. Fla., requires that "[a] *pro se* person in custody must use the standard form . . . to file . . . a complaint, such as a 42 U.S.C. § 1983 complaint, that alleges a violation of the United States Constitution or other federal law by a governmental official." Section VIII of the form requires a plaintiff to provide information about previous lawsuits filed by the plaintiff in federal court. (*See* Doc. 12 at 8–10). Subsection C asks, "Have you filed other lawsuits in state or federal court . . . relating to the conditions of your imprisonment?" Plaintiff marked the box for "Yes." (Doc.12 at 9).

Subsection D states, "If you[r] answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. (*If there is more than one lawsuit, describe the additional lawsuits on an additional page, using the same format.*)." (Doc. 12 at 9). Plaintiff left blank questions 1 through 5 and responded "no" to question six, which asks if the case is still pending. In response to the next question requiring Plaintiff to "give the approximate date of disposition" of the prior case, he wrote "settled case." (Doc. 12 at 10). The Court takes judicial notice[3] of *Adams v. Sgt. Jones*, No. 3:16-cv-105-TJC-JK, Docs. 127, 129, 130 (M.D. Fla. 2020) (dismissing

---

[3] *See* Fed. R. Evid. 201; *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (indicating that documents filed in another court may be judicially noticed); *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

case with prejudice following a settlement conference and the parties' filing of a joint stipulation of dismissal with prejudice), which appears to be the case referenced by Plaintiff.

Although Plaintiff represented to the Court that he had filed only one prior case related to the conditions of his confinement in federal court, Defendants identify another case previously filed by Plaintiff — *Adams v. Warden Landrum*, No. 3:14-cv-655-TJC-JK (M.D. Fla. 2014).[4] In that case, Plaintiff sought to enjoin the Secretary of the Florida Department of Corrections from transferring him back to Suwannee Correctional Institution ("Suwannee CI"), where he claimed he was kicked and punched while in full body restraints. Plaintiff alleged that he feared for his life should he be returned to Suwannee CI. *Id.* at Doc. 1. The Court denied his request for injunctive relief and dismissed the case without prejudice. *Id.* at Docs. 4, 5.

In his Response to the Motion to Dismiss, Plaintiff states merely that he checked the box for "yes," thereby indicating that he had filed other lawsuits related to the conditions of his confinement, and claims that refutes Defendants' argument. (Doc. 39 at 7). However, it does not, because Plaintiff was required to provide information about *each* prior federal action relating to the conditions of his imprisonment.

---

[4] The Court takes judicial notice of this case. *See* Fed. R. Evid. 201; *see also supra*, n.3.

"It is an abuse of judicial process to make a misrepresentation regarding the existence of a prior lawsuit." *Ingram v. Warden*, 735 F. App'x 706, 706–07 (11th Cir. 2018) (per curiam) (unpublished)[5] (citing *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). Rule 11 of the Federal Rules of Civil Procedure permits a district court to impose sanctions on a party who knowingly files a pleading containing a false contention. *See* Fed. R. Civ. P. 11(b).

Plaintiff knows that he filed the earlier action, and yet he fails to acknowledge it, even after Defendants brought the action to his attention in the Motion to Dismiss. Further, by signing the Amended Complaint, Plaintiff represented the following:

> Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Doc. 12 at 10).

---

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

Plaintiff's misrepresentation of his litigation history warrants dismissal of this action for abuse of the judicial process, and the dismissal counts as a "strike" for purposes of 28 U.S.C. § 1915(g). *See Ingram*, 735 F. App'x at 706–07 (affirming the district court's dismissal for the abuse of judicial process and imposition of a strike under Section 1915(g) where the plaintiff failed to disclose a prior lawsuit related to the conditions of his imprisonment, notwithstanding the alleged miscommunication between himself and the person who helped him prepare the complaint).

**B. Failure to State a Claim**

Even had Plaintiff fully and truthfully represented his litigation history, the Amended Complaint is also subject to dismissal for failure to state a claim.

*1. Motion to Dismiss*

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Generally, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### 2. Deliberate Indifference

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. To succeed on such a claim, Plaintiff must show that the failure to provide him medical care amounted to cruel and unusual punishment under the Eighth Amendment of the United States Constitution. He must first "set forth evidence of an objectively serious medical need. Second, [he] must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *see also Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). "Third, as with any tort

claim, [he] must show that the injury was caused by the defendant's wrongful conduct." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

An objectively serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert*, 510 F.3d at 1326 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). To demonstrate deliberate indifference, Plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Goebert*, 510 F.3d at 1326 (alteration in original) (internal quotation marks and citation omitted). *See also Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

As to the individual capacity claims against Nurses Todd and Thompson, Plaintiff complains of rectal bleeding and pain, lumps or a growth in his rectal or genital area, and unspecified symptoms that worsened after he saw Nurse Todd and before he saw Nurse Thompson. However, he does not describe the quantity of blood or the size of the lumps or growth. Nor does he describe which symptoms worsened or how, or any physical limitations caused by his symptoms. Defendant further explains that he finally received unspecified "adequate treatment" after being transferred to the Lake Butler facility, followed by an outpatient surgical procedure to eliminate the growth. But Plaintiff fails to describe what he was finally diagnosed

with and treated for at Lake Butler, what form of "adequate treatment" occurred before surgery, and whether the surgical procedure was elective or required. Without more, Plaintiff's vague allegations fail to sufficiently allege an objectively serious medical need.

Moreover, Plaintiff fails to sufficiently allege that Nurses Todd and Thompson caused his injuries. While a delay in treatment can rise to the level of deliberate indifference in some circumstances, *see, e.g.*, *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999), Plaintiff states merely that his condition "worsen[ed]" between his visit with Nurse Todd and his subsequent visit with Nurse Thompson. He does not describe which symptoms worsened or specifically how the symptoms changed. He also claims he suffered unnecessary pain due to the Nurses' actions. However, although he claims they did not provide him with over-the-counter medications for his pain, he does not allege that he was unable to obtain such medications without a prescription. *See, e.g.*, *Sanchez v. Corizon health, Inc.*, No. 21-8069, 2022 WL 4857122, at * 5, n.2 (10th Cir. 2022) ("There is no evidence that the over-the-counter medications recommended by Corizon to treat [the plaintiff's] GERD were not available at the commissary or that he was otherwise prevented from securing them."). Further, he does not allege that earlier treatment by Nurses Todd and Thompson would have shortened the length or severity of his symptoms, caused

the surgical procedure to occur earlier,[6] or caused him to forego the surgical procedure at all.

As Plaintiff has not sufficiently alleged the existence of a serious medical need or causation, the individual capacity claims against Nurses Todd and Thompson are due to be dismissed.

> a. *Claims Against Centurion and Official Capacity Claims Against Nurses Todd and Thompson*

Plaintiff also sues Centurion in their individual and official capacity and Nurses Todd and Thompson in their official capacity. A claim against a defendant in his official capacity is a suit against the entity of which the named defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Because Plaintiff alleges Nurses Todd and Thompson are employed by Centurion, and because Plaintiff also sues Centurion in this action, the official capacity claims against Nurses Todd and Thompson are duplicative of the official capacity claim against Centurion and are dismissed.

As for Plaintiff's claims against Centurion, "[a] private entity, like [Centurion], is subject to liability under section 1983 when it 'performs a function traditionally within the exclusive prerogative of the state,' such as contracting with

---

[6]The Court notes that, even though Plaintiff claims he began receiving "adequate treatment" at the Lake Butler facility when he was transferred there on February 17, 2020, the surgical procedure did not occur until April 13, 2020 — approximately two months later.

the [government entity] to provide medical services to inmates because it becomes 'the functional equivalent of the municipality' under section 1983." *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 940 (11th Cir. 2017) (quoting *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011)).

However, Plaintiff cannot hold Centurion liable for his alleged injuries based on a mere theory of supervisory liability. *See Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 658, 694 (1978). Instead, to hold Centurion liable under Section 1983, Plaintiff must allege that "the moving force of the constitutional violation" was an official policy or custom. *See Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (1993) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (explaining that to hold a government entity liable a plaintiff "must show: (1) that his constitutional rights were violated; (2) that the [entity] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."); *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997) ("[T]he *Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates.").

Plaintiff attempts to satisfy this standard by alleging that Centurion "instruct[ed] it's employees to ignore serious medical problem[s] by misdiagnosis and negligence," and "created a custom and policy of allowing Doctors and nurses to deprive prisoners [of] adequate medical attention[] when the procedure would c[ost] the company money." (Doc. 12). However, as explained, Plaintiff does not sufficiently allege an underlying constitutional violation. *See Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir. 2009) (citing *Monell*, 436 U.S. 658; *Los Angeles v. Heller*, 475 U.S. 796 (1986); *Rooney v. Watson*, 101 F.3d 1378 (11th Cir.1996)). Moreover, "conclusory statements are insufficient to properly allege a policy or custom. 'A pattern of similar constitutional violations is ordinarily necessary.'" *Est. of Hand by & through Hand v. Fla. Dep't of Corr.*, No. 21-11542, 2023 WL 119426, at *6 (11th Cir. Jan. 6, 2023) (quoting *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011)). Plaintiff alleges no facts demonstrating a pattern of constitutional violations that would support his broad claim that Centurion instructs its employees to ignore serious medical problems and allows the deprivation of adequate medical care to save money. Therefore, the claims against Centurion are dismissed.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** as follows:

1. Plaintiff's Motion to Hear and Rule (Doc. 43) is **GRANTED** only to the extent that the Court enters this order.

2. Defendant's Motion to Dismiss (Doc. 35) is **GRANTED**. This action is **DISMISSED with prejudice** for abuse of the judicial process and, alternatively, for failure to state a claim. Further, this dismissal counts as a "strike" for purposes of 28 U.S.C. § 1915(g).

3. The clerk must enter judgment accordingly and **CLOSE** this case.

**DONE** and **ORDERED** in Orlando, Florida on February 17, 2023.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party